WOODMANSSEE, J.
This is an action brought by Fred Tuke, a tax-payer, on behalf of the- city of Cincinnati, against the director of public safety and the board of control of the city of Cincinnati, to enjoin them from carrying out á certain contract with another der *92 fendant, J. M. Quill, for the improvement of Eastern avenue by the paving of same with wood blocks, it being alleged that the contract held by' said defendant Quill with the city of Cincinnati for making said improvement was entered into by said parties without a proper compliance with the statute of Ohio in such eases made and provided, and for other reasons that will be hereafter referred to in this opinion.
The petition sets out that on or about the 12th day of April, 1909, the city council passed a resolution declaring it necessary to improve said Eastern avenue, and that subsequently the board of public service, which was the predecessor in office of the defendant director of public service, advertised for sealed proposals' for the furnishing of the necessary labor and materials for the construction of said improvement in accordance with certain plans and specifications. Said petition sets out quite fully the improvement specifications, including certain other requirements that were made by the bidders who proposed to do said work. Said petition further represents that on the 5th day of October, .1909, the defendant, J. M. Quill, submitted to said board of public service two proposals to do the work of constructing said improvement, one for the aggregate sum of $62,348.50 and the other for the aggregate sum for doing the work of $77,-132.50, and that on the same day eight other proposals in due and proper form were submitted to said board by other persons, and that in five of said proposals the parties making the same agreed to do the work for less than the sum of $77,132.50.
The petition further alleges that on the 28th day of January, 1910, the defendant, J. H. Sundmaker, as director of public safety, and successor to said board of public safety, rejected said proposal of Quill to do the work for $62,348.50, and also five other proposals to do said work for less than $77,132.50, and declared said proposal of said Quill to do the work for the sum of $77,132.50 to be the lowest and test bid made therefor, and that thereupon the board of control authorized said director to enter into a contract with said Quill to do said work for $77,-132.50, and' said contract was awarded to said Quill on the 29th day of January, 1910, and that the contract was entered into on said date.
*93 It is alleged that said Quill made both of said bids at the same time, and at the same time deposited two samples of oil and two samples of block, treated and untreated. It is alleged that to each of said bids was attached an affidavit of said Quill, which were identical in words and contained such statements of facts as are required by law in such cases. The petition alleges that the samples of oil deposited by said Quill did not conform to the specifications; that he did not intend when he made said bids and does not now intend to use oil which complied with such specifications, and that he is not able to procure, such oil for that purpose.
It is claimed that the awarding of said contract to said Quill for said $77,132.50 and the entering into said contract for said improvement between him and the city of Cincinnati is in contravention of law, and is an abuse of the corporate powers of said city and the lawful discretion of the defendants.
The prayer of the petition is in the alternative, first, that the execution of the contract so awarded be enjoined; and second, that if this relief be denied, that the defendants be enjoined from paying said Quill for said- improvement more than the sum of $62,348.50, and that they be enjoined from paying said Quill anything on account of said improvement if he uses oil that is not up to the standard called for in the specifications.
To this petition the director of public safety of the city of Cincinnati and the other city officials, defendants in said action, filed a demurrer to said petition for the reason that the facts set forth therein do not constitute a cause of action. The defendant, J. M. Quill, files a separate demurrer upon the same ground.
For the purposes of this demurrer the allegations of the petition, of course, are taken to be true. Whatever may be the defense of the defendants, the ease as it now presents itself to the court is upon the broad allegation that the defendant, Quill, made two proposals to do the work in question, both identically the same, except that one was for the price of $62,348.50 and the other for $77,132.50. According to the affidavit of Quill, the two samples of oil, which he deposited with his bids, both conform to the requirements of the specifications, and as far as is made to appear by the petition (which is simply a plain state *94 ment of the case), the only difference was in the amount which he was to be paid for the improvement, and that the city has agreed to pay said Quill' for said work $14,784 more than he proposed to do the same for in one of his bids.
It is made to appear in argument of counsel that this extra compensation was granted to provide for the difference in cost between the grade of oil accepted and the other grade of oil submitted with the other bid.
For the purposes of this demurrer we can not consider that fact, for it is not disclosed in the petition and is really a matter of defense.
The petition goes to the extreme in alleging that neither sample of oil met the conditions of the specifications, but the court finds that such allegations are made by the petition to appear to be based upon a technical construction of terms that is not justified, so that as far as the samples of oil are concerned, they are treated as both complying with the requirements in the specifications.
It is urged by counsel for the defendants that the director of public safety in the exercise of his discretion in the acceptance of the lowest and best bid, does not mean the lowest bid in the matter of dollars and cents, but that in taking into consideration the materials to be used, he would have the right to say whether he was justified in making the additional expenditure because of the superior quality of the material.
This court is clearly of the opinion that if two bids submitted by the same party for the same work, complied with the required specifications, it would be the duty of the director of public safety to accept the lowest bid of that particular bidder. It is true that in the exercise of his discretion as between different bidders, for reasons known to himself, he may consider one bid better than another, even if a higher bid, and it may still be the lowest and best bid. His opinion could be based upon his knowledge of the financial ability of the bidder, or by his reputation for doing like work, and basing his conclusion upon this opinion he could put aside a lower bid of one person in favor of a higher bid of another. And in the ease before the court) after all bids *95 of other parties had been excluded, there was left for the consideration of said director the two bids of the defendant, Quill, and in the exercise of his discretion as to which was the lowest and best bid, the only two matters for him to consider were, as to whether both bids were up to the requirements of the specifications, and if so then he was bound to approve the lowest bid.
As far as this court is advised by the pleadings, both of said bids must stand or fall together. For the purposes of this hearing the court holds that both bids were up to the specifications. If it should be later found upon a hearing that the director of public safety was justified in refusing to accept the lowest bid because the grade of the oil did not come up to .the specifications, then the inquiry would still remain as to whether or not the bid for $77,132.50 was the lowest and best bid when considered alongside of the five other bids that were rejected.
It is urged in argument by counsel for the defense that the director of public safety found that the oil which he accepted was of such a superior gradé that he was justified in letting the contract for the advanced price. This court holds that as far as the materials are concerned, if they conform strictly to the specifications, then all bids are on an equal footing if all other conditions of the bidders are equal in respect to financial ability and capacity to do the work. To hold otherwise would warrant a bidder who found provisions made in a specification for an inferior article to put in a bid at a lower figure which would include that particular article; and then on the theory that he could explain the advantage of some superior article, make a separate bid which would include the latter article at a very much increased consideration. To say that it would be in the power of the director of public safety to accept the latter bid as the lowest and best, would be to cut out competition that is provided for in the statute, for had the other bidders known that a bid was to have been considered with reference to another article than was in the specifications they too could have offered a bid for the use of the like material. Such bid may have been very much less than the other, for the other party under the circumstances knew that there would be no competition for that particular material.
*96 In other words, the municipality should have the benefit of competition, and on the other hand every bidder should be assured that the plans and specifications are the basis for all bids, and that no contract will be let under the bids for an improvement that does not come up to such plans and specifications, and that no bid for different and better materials than are provided for in the specifications will, for that reason, be regarded as the lowest and test bid, if in dollars and cents it exceed the other bids in competition.
The petition contains a number of criticisms relating to the specifications for the contract in question. It is disclosed, however, that the present director of public safety, defendant herein, had nothing to do with preparing said specifications. If it is true as alleged that he put aside the lowest bid for the highest bid, and for the reason that the material to be used in the latter was of superior quality, such motive would induce the cautious business man to act in the same way relative to his private business affairs.
But in the letting of public contracts it becomes necessary to comply strictly with the statutes relating thereto. The object of the statutes is to secure competitive bidding, and no departure from the spirit and purpose of the statutes can be justified on either legal or equitable grounds.
The demurrer to the petition is overruled. In view of the apparent necessity of the improvement in question and the rights and convenience of so many people who necessarily use Eastern avenue, this cause ought to be brought to a speedy hearing, and the defendants are given ten days in which to further plead.